# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
No. 13-919V
Filed: May 29, 2018
Not for Publication

```
*************************************
KIONA WARREN,                        *
                                     *
                                     *
                 Petitioner,         *          Attorneys' fees and costs decision;
v.                                   *          lack of reasonable basis to proceed
                                     *
SECRETARY OF HEALTH                  *
AND HUMAN SERVICES,                  *
                                     *
                 Respondent.         *
                                     *
*************************************
```

F. John Caldwell, Jr., Sarasota, FL, for petitioner.
Debra A. Begley, Washington, DC, for respondent.

**MILLMAN, Special Master**


### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On November 21, 2013, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012), alleging that a human papillomavirus ("HPV") vaccine administered on September 17, 2010 caused her thrombotic thrombocytopenic purpura ("TTP") and systemic lupus erythematosus ("SLE"). Pet. at ¶¶ 1, 3. On September 25, 2015, petitioner filed an Amended Petition wherein she removed her claim that HPV vaccination caused her SLE. Amended Pet. at ¶ 5. On October 4, 2017, petitioner moved for dismissal. On October 5, 2017, the undersigned issued a decision dismissing the case for failure to prove a prima facie case of causation in fact. On May 7, 2018, petitioner filed a motion for attorneys' fees and costs.


### PROCEDURAL HISTORY

Petitioner filed his petition on November 21, 2013. The case was assigned to the

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

undersigned on the same day.

During the initial telephonic status conference held on March 5, 2014, petitioner's counsel reported that he was awaiting records from Broward General Medical Center and Memorial Hospital West.   He wanted to review all of the medical records to decide whether to recommend dismissal to petitioner.

During the telephonic status conference held on April 16, 2014, petitioner's counsel reported that he subpoenaed records from Broward General Medical Center and was still waiting to receive those records.

On May 23, 2014, petitioner's counsel reported that he retained an immunologist to prepare an expert report.   On November 10, 2014, after two motions for an extension of time, petitioner filed an expert report from Dr. Philip Fireman.

On November 19, 2014, during a telephonic status conference, the undersigned discussed that petitioner would need to file a supplemental expert report because Dr. Fireman did not assert that petitioner's SLE was caused or significantly aggravated by her HPV vaccination.   The undersigned gave petitioner until January 20, 2015 to file Dr. Fireman supplemental expert report.

After granting petitioner's seven motions for an extension of time, the undersigned held a status conference on September 1, 2015.   Petitioner's counsel reported he would file Dr. Fireman's supplemental expert report and an amended petition to remove the allegation that petitioner's HPV vaccination caused her SLE by September 23, 2015.

On September 22, 2015, after delays lasting over nine months, petitioner filed Dr. Fireman's supplemental expert report.   On September 25, 2015, petitioner filed an amended petition wherein she removed her claim that her HPV vaccination caused her SLE and limited her claim to TTP.

On October 29, 2015, the undersigned held a status conference discussing Dr. Fireman's supplemental report.   In his supplemental report, Dr. Fireman clarified that he did not support the prior allegation that petitioner had SLE.   He did believe that the HPV vaccine either caused or significantly aggravated petitioner's TTP.

On May 20, 2016, respondent filed his Rule 4(c) Report and an expert report.   During a status conference held on June 6, 2016, petitioner's counsel said he would like to speak with his client about dismissing the case after reviewed respondent's expert report.   The undersigned gave petitioner until July 6, 2016 to file a motion to dismiss.

On a status conference held on July 20, 2016, the undersigned asked petitioner's counsel why he requested 45 days to file a motion to substitute counsel or a motion to dismiss. Petitioner's counsel explained he would like to help petitioner retain a new counsel by contacting other vaccine attorneys on her behalf.   Concurrently, he discussed with petitioner to see if she would like to dismiss her claim.

On September 12, 2016, during a status conference, petitioner's counsel said petitioner did not want to dismiss the case and he could not find an attorney to take her case.   He expected to file a motion to withdraw by September 19, 2016.

Petitioner's counsel did not file a motion to withdraw or a motion for an extension of time on September 19, 2016.   The undersigned's law clerk contacted the parties to clarify the course of action on September 21, 2016.   Petitioner's counsel said in his email that he did not want to file a motion to withdraw until he had a clear understanding of his client's wishes and asked to file a status report by October 21, 2016 stating whether petitioner would file a motion to withdraw or a motion for a ruling on the record.

Because petitioner's counsel had been unable to decide on a course of action to take since June 6, 2016, the undersigned issued an order on September 21, 2016 asking the parties to set an entitlement hearing.   On November 1, 2016, the undersigned issued a prehearing order setting an entitlement hearing for November 14, 2017.

On October 4, 2017, petitioner filed a motion for dismiss.   On October 5, 2017, the undersigned dismissed the petition.   Judgment entered on November 7, 2017.

On May 7, 2018, petitioner filed a motion for attorneys' fees and costs.   Petitioner requests $45,408.30 in attorneys' fees and $15,206.35 in attorneys' costs, for a total request of $60,614.65.   In accordance with General Order #9, petitioner said she did not advance any funds in the prosecution of her claim.

On May 21, 2018, respondent filed a response objecting to an award of attorneys' fees and costs because petitioner failed to establish a reasonable basis for her claim.   Resp. at 2. Respondent argues that petitioner's two expert reports from Dr. Fireman ignored petitioner's preexisting SLE and the association between SLE and TTP.   Id.   Dr. Fireman's two reports have no foundation in the clinical record.   Id.   Respondent stated that respondent defers to the undersigned as to the appropriate amount of attorneys' fees and costs if the undersigned determines that petitioner's claim was filed with a reasonable basis.   Id. at 3.

On May 29, 2018, petitioner replied to respondent's opposition to her motion for attorneys' fees and costs.   Petitioner argued that this was novel and difficult case on the medicine.   Reply at 1.   Petitioner's TTP onset was eleven weeks after receiving her vaccination. While "Dr. Fireman opined in both his reports that the eleven-week onset was sufficiently temporally close for him to make the etiological connection medically between the vaccine and the TTP," it is very rare to have a finding of causation with more than an eight-week interval between vaccination and onset.   Id. at 3.   It was this timing consideration articulated by the undersigned and the government's expert that convinced petitioner to move for dismissal.   Id. Petitioner argued that "respondent raised the reasonable basis burden to require something akin to legal certainty in expert reporting."   Id. at 4.

This matter is now ripe for adjudication.

**DISCUSSION**

I.     **Entitlement to Fees Under the Vaccine Act**

  a.  **Legal Standard**

Under the Vaccine Act, a special master or a judge on the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard.   Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).   A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.   Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).   Petitioners are "entitled to a presumption of good faith."   Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Rules.   It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011).   Traditionally, special masters have been "quite generous" in finding reasonable basis.   Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, No. 10-362V, 2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis.").   However, as former-Chief Judge Campbell-Smith noted in her affirmance of Special Master Moran's decision not to award attorneys' fees in Chuisano, "Fee denials are expected to occur.   A different construction of the statute would swallow the special master's discretion."   Chuisano v. United States, 116 Fed. Cl. 276, 286 (Fed. Cl. 2014).   See also Dews v. Sec'y of HHS, No. 13-569V, 2015 WL 1779148 (Fed. Cl. Spec. Mstr. Mar. 30, 2015) (in which the undersigned found petitioner was not entitled to attorneys' fees and costs because she did not have a reasonable basis to bring the petition).

In determining reasonable basis, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim."   Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)).   Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed.   Turner, 2007 WL 4410030, at *6–*9. However, the Federal Circuit has recently clarified in Simmons that "a looming statute of limitations deadline . . . has no bearing on whether there is reasonable factual basis 'for the claim' raised in the petition.   That is an objective inquiry unrelated to counsel conduct."   Simmons v. Sec'y of HHS, 875 F. 3d 632, 636 (Fed. Cir. 2017).

Moreover, while a petitioner may have a reasonable basis to file a petition, the reasonable basis can be lost as the case develops.   In Perreira, the Federal Circuit upheld a special master's decision awarding attorneys' fees and costs only up until the hearing began.   Perreira v. Sec'y of HHS, 33 F.3d 1375, 1377 (Fed. Cir. 1994).   The special master found that petitioners should

4

have realized that they did not have a reasonable basis to move forward with the case once they reviewed their expert's opinion prior to the hearing and saw the opinion was unsupported by medical literature or studies.   Id.   The Federal Circuit noted that "Congress must not have intended that every claimant . . . collect attorney fees and costs" because the funds that are payable under the statute are limited.   Id. at 1377.   "Petitioners are not given a blank check to incur expenses without regard to the merits of their claim."   Perreira, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994).

###### b.   Good faith and reasonable basis

Petitioner is entitled to a presumption of good faith, and respondent does not contest that the petition was filed in good faith.   Grice, 36 Fed. Cl. at 121.   There is no evidence that this petition was brought in bad faith.   Therefore, the undersigned finds that the good faith requirement is satisfied.

Petitioner filed two expert reports from Dr. Fireman on November 10, 2014 and September 22, 2015, respectively.   In his first report, Dr. Fireman mistakenly stated that petitioner did not have SLE prior to her HPV vaccination on September 17, 2010, the onset of TTP could have occurred eleven weeks after HPV vaccination, and TTP is not associated with SLE.   Ex. 14.   In her Order of September 1, 2015, the undersigned listed additional questions that Dr. Fireman needed to address in his supplemental expert report.   In his second report, Dr. Fireman stated that molecular mimicry can cause TTP absent any medical support that the HPV vaccine can induce such mimicry.   Ex. 20.   Because both Dr. Fireman's expert reports ignored petitioner's preexisting SLE and the fact that SLE has been causally related to TTP, the undersigned finds that petitioner lost reasonable basis on September 22, 2015, the date on which petitioner filed Dr. Fireman's supplemental expert report.   Thus, the undersigned awards reasonable attorneys' fees and costs up until September 22, 2015.   Accordingly, **this results in a deduction of $15,091.10**.

## II.   Reasonableness of Requested Attorneys' Fees and Costs

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."   Avera, 515 F.3d 1343, 1348.   This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney."   Rodriguez v. Sec'y of HHS, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing Avera, 515 F. 3d at 1349).   For cases in which forum rates apply, McCulloch provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience.   See McCulloch v. Sec'y of HHS, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation."   Avera, 515 F.3d at 1348.   Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary."   Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)).   Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task.   See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008).   It is "well within the special master's discretion to reduce the hours to a number that, in [her]

experience and judgment, [is] reasonable for the work done."   Id.   Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond.   See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009).   A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees.   Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### 1.   Reasonable Hourly Rates

Petitioners request the following hourly rates for the period from November 21, 2013 to September 22, 2015:

|  | 2013 | 2014 | 2015 |
|---|---|---|---|
| F. John Caldwell | $300 | $300 | $300 |
| Cori Petrilla | N/A | N/A | $105 |
| Jennifer Lally | N/A | N/A | $105 |
| Kimberly Grabbe | $135 | $135 | N/A |
| Tabitha Stone | N/A | $135 | N/A |

The undersigned finds petitioners' requested hourly rates for Mr. Caldwell and his paralegals reasonable.

### 2.   Reduction of Billable Hours

### a.   Clerical Tasks

It is firmly rooted that billing for clerical and other secretarial work is not permitted in the Vaccine Program.   Rochester v. United States, 18 Cl.Ct. 379, 387 (1989) (denied an award of fees for time billed by a secretary and found that "[these] services … should be considered as normal overhead office costs included within the attorneys' fees rates"); Mostovoy v. Sec'y of HHS, 2016 WL 720969, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2016).

Petitioner's counsel's billing records contain multiple entries that are best characterized as administrative tasks.   Throughout the billing invoices, counsel and paralegals billed 0.1 to 0.2 hours for activities including "Receipt and review of notice," "Receipt and review of scheduling order," "Review electronic notice. Review and download notice . . .," "Reschedule status conference," "Emails from/to OSM re: next status conference."   Doc. 55-1 (entries dated 11/25/2013; 9/11/2014; 9/15/2014; 5/18/2015; and 5/19/2015) and (entries dated 11/25/2013; 1/2/2014; 1/3/2014; 1/7/2014; 1/8/2014; 1/9/2014; 1/13/2014; 1/20/2014; 1/22/2014; 1/27/2014; 3/5/2014; 3/26/2014; 4/16/2014; 5/15/2014; 5/19/2014; 5/23/2014; 6/13/2014; 8/5/2014; 9/11/2014; 11/10/2014; 11/19/2014; 1/20/2015; 3/5/2015; 4/22/2015; 5/19/2015; 6/24/2015; 8/19/2015; 8/24/2015; and 9/1/2015).   Beyond the fact that this is clerical work billed at counsel's and paralegals' rates, the undersigned cannot imagine how it takes six to twelve minutes to review a one-page court order or enter a date, or even three dates, on one's calendar.   These types of entries are clerical in nature and do not constitute billable time.   Accordingly such entries will be deducted from the fee award, amounting to a **reduction of $1,309.50**.

### b.  Research

Up to September 22, 2015, Mr. Caldwell billed 2.6 hours for researching TTP/SLE.   Doc. 55-1, at 7 (entry dated 5/19/2015; and 6/26/2015).   Mr. Caldwell hired Dr. Fireman to provide expert reports and any cited medical literature in his reports in this case.   Therefore, the undersigned finds the 2.6 hours of research is not compensable and the nonpayment results in a **deduction of $780.00**.

### c.  Excessive and Block Billing

Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.   See Ericzon v. Sec'y of HHS, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); Raymo v. Sec'y of HHS, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).   Special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly.   See Sabella, 86 Fed. Cl. at 209.

After carefully reviewing the billing records, the undersigned finds that counsel billed for an excessive amount of time to review expert reports, cited medical literature, and medical records.   From November 21, 2013 to September 22, 2015, while Mr. Caldwell billed 15.6 hours for reviewing medical records,[2] which the undersigned finds reasonable, he billed another 34.3 hours for reviewing petitioner's expert reports (total 7 pages), cited medical literature (total 113 pages), and medical records.   Ex. 55-1, at 4-8 (entries dated 4/16/2014; 6/13/2014; 6/16/2014; 10/3/2014; 11/10/2014; 1/19/2015; 5/26/2015; 5/27/2015; 7/9/2015; 7/10/2015; 7/20/2015; 8/13/2015; 8/17/2015; 8/31/2015; 9/1/2015; 9/1/2015; 9/9/2015; and 9/10/2015).   Not only were the 34.3 hours billed for reviewing medical records, expert reports, and cited literature excessive, but also they were often block-billed.   Based on her 27 years of experience as a special master, the undersigned finds 25 hours should be sufficient.   The adjustment results in a **deduction of $2,790.00**.

Thus, the total amount of attorneys' fees for Maglio Christopher & Toale, PA is reduced by $19,970.60 and $25,437.70 is awarded.   The undersigned finds $15,206.35 in attorneys' costs reasonable.[3]   Therefore, the total amount paid for attorneys' fees and costs incurred by Maglio Christopher & Toale, PA is **$40,644.05**.

### CONCLUSION

The undersigned finds petitioner had a reasonable basis to file a petition and this reasonable basis continued during the initial period of the prosecution of her case, up until the supplemental

---

[2] Ex. 55-1, at 3-9 (entries dated 2/7/2014; 2/10/2014; 2/11/2014; 2/12/2014; 2/13/2014; 5/12/2014; 5/14/2014; 9/2/2014; and 1/19/2015).
[3] The undersigned finds Mr. Fireman's 25 hours of work on this case billed at an hourly rate of $450 reasonable.

expert report filed on September 22, 2015.   **Accordingly, the court awards $40,644.05**, representing attorneys' fees and costs.   The award shall be in the form of a check made payable jointly to petitioner and Maglio Christopher & Toale, PA in the amount of **$40,644.05**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]


**IT IS SO ORDERED.**


Dated: <u>May 29, 2018</u>                                    <u>s/ Laura D. Millman</u>
                                                                      Laura D. Millman
                                                                      Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.